# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| SHIRLEY TRUDELLE,<br><br>        Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social Security<br>Administration,<br><br>        Defendant. | Case No. CV 05-6873 (SH)<br><br>MEMORANDUM DECISION<br>AND ORDER |

      This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the

parties have filed a joint stipulation.  After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed.

On June 5, 1998, plaintiff Shirley Trudelle filed an application for Supplemental Security Income.  Administrative Record ["AR"] 288-92.  On August 7, 1998, the Administration denied her application.  AR 55.  Upon reconsideration on October 28, 1998, the Administration determined the first decision was correct.  AR 61.  After a hearing before an Administrative Law Judge ["ALJ"], Plaintiff was again denied benefits on July 31, 2000.  AR 36.  Plaintiff subsequently sought review by the Commissioner's Appeals Council, resulting in a reversal and remand on October 30, 2002 of the ALJ's decision. AR 75.  The Appeals Council determined that the ALJ failed to evaluate plaintiff's subjective complaints of pain. AR 76. After a second hearing was held by a different ALJ on September 29, 2003 (AR 413), a second decision denying the claim was made on January 14, 2004 (AR 20).

Plaintiff makes two challenges to the ALJ's determination.  Plaintiff alleges that the ALJ erred (1) in failing to properly consider the medical expert's testimony; and (2) in improperly discounting the plaintiff's credibility. Since the Court finds sufficient grounds for a reversal under the second challenge, the first one need not be addressed. That is, whether or not Dr. Kroeger's opinions should  have been credited over Dr. Chen's, plaintiff's unremitting neck pain renders her disabled.

## DISCUSSION

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective testimony about her excess pain. The Commissioner responds by arguing that substantial evidence in the record supports the determination that plaintiff's testimony was exaggerated. More precisely, the Commissioner responds that the ALJ provided several reasons finding plaintiff's testimony to not be credible. The Court disagrees with this contention and finds each of the ALJ's  reasons for discrediting

plaintiff's credibility to be non-compliant with the clear and convincing reasoning required by law. Each of the ALJ's reasons will be addressed in turn.

There is no doubt that plaintiff's medical history supports a well established record of plaintiff's impairments of neck and back pain. One of earliest evaluations in the record dates back to an orthopedic consultation done on May 7, 1997 by Dr. Jorge Echeverri. AR 220. There, Dr. Echeverri found that plaintiff's "neck shows limited range of motion in all" and that plaintiff has "weakness to forward resistance, posterior resistance, lateral resistance." AR 220. Plaintiff's complaints of her debilitating pain spanned more than five years, and nearly all the medical records memorializing upper back and neck pain.

A rheumatology consultation on June 30, 1997 addressed her complaints of chronic neck pain. AR 208. On July 10, 1997, the day plaintiff had surgery to address her pain, an evaluation by the surgeon discussed her history of severe neck and inferior mesoscapular border pain. AR 157. After a post-surgery follow-up visit on September 11, 1997, plaintiff continued to complain about back upper back pain, and that "she cannot sit up for more than two hours when her back begins to hurt." AR 205. On October 2, 1997, a medical evaluation pointed to her "persistent neck pain." A physical examination done on July 11, 2000 revealed plaintiff had "diminished ability to hold her head upward" and "forward flexion of her neck due to diminished extensor strength in the posterior cervical spine." AR 304. An internal medicine consultation on April 17, 2003 once again described her aggravating neck and back pain, and also revealed plaintiff had tenderness and decreased range of motion in the cervical spine area. AR 355-58.

Furthermore, plaintiff's subjective complaints are well documented in the forms and questionnaires plaintiff filled out. In a pain questionnaire in June of 1998, plaintiff describes her back, shoulder, and neck pain as an "intense, burning crushing feeling" which occurs all of the time. AR 127. In another form, plaintiff explains she "can't do much of anything anymore," for example, "not able to make a lousy cup of instant coffee." AR 133. At the November 20, 2000 hearing, plaintiff testified that she has to

often lay down because of the pain in her back and neck. AR 432. Plaintiff complained that she needed to lie down for half an hour and could stand for about 15 minutes before having to lie down again. AR 433. Plaintiff alleged that the pain in the mornings are worst. AR 433. The Medical Examiner (Dr. Kroeger) stated that plaintiff's neck pain had a clear medical basis. AR 399-401.

Once the plaintiff produces objective medical evidence of an underlying impairment, the ALJ may still reject the plaintiff's excess pain testimony, but only by setting forth clear and convincing reasons for doing so. Light v. social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In order to find a plaintiff not credible, the ALJ "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between [her] testimony and [her] own conduct, or on internal contradiction in that testimony." Id. Even when the plaintiff testifies to a higher degree of pain than corroborated by the objective medical evidence, the ALJ may disbelieve the plaintiff's testimony but only after making specific findings justifying that decision. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

The first justification for plaintiff's "suspect" credibility is that "there is no evidence that [plaintiff] has made any effort to seek treatment at a county medical facility or with any other medical source." AR 28. In Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), the Ninth Circuit stated that a plaintiff's credibility may be doubted after "a finding by the ALJ that the proffered reason [for failing to seek medical treatment] is not believable." Here, the ALJ mis-characterized the point of plaintiff's testimony. The plaintiff's reasons were more related to frustration with her doctors' failures rather than her unwillingness to seek treatment. AR 437 (Q: And is there a reason that you haven't been more aggressive in getting treatment say in the last year or so? A: Because the doctors I was seeing at the time that I came in and (INAUDIBLE) better than, than sent me for 60, 60 X-rays just to get me out of his face.). AR 438 (Q: [I]s it because you just had a disagreement with the doctor or something else? A: No, because nobody's been

4

helping – nobody could help me.).  In addition, plaintiff's reasons for not seeing certain doctors relate more to the bureaucracy of health insurance, not because she did not want to obtain treatment. AR 438 ("I couldn't go back to see him because it was [not] authorized by Healthnet. He was not a Healthnet doctor. Dr. Bonini was.").  See also AR 390 (Q: Has anybody suggested or recommended additional surgery for your neck? A: I don't know. Every time a doctor notices my, he reads my file or something and a new HMO takes over and my doctors are sent away so no doctor has –).

Further, the ALJ's characterization that "[plaintiff] related that she does not have any monies or health insurance to see any physician" is inaccurate, if not wholly wrong. Plaintiff testified that she sees Dr. Bonini mainly to get refills on pain medications.  AR 426-27. The record does not indicate plaintiff does not have money or insurance to see a doctor. Rather, plaintiff seems to have simply been fed up with the ineffectiveness of all her treatments.  In the court's view, these reasons adequately explain any failure by plaintiff to seek additional medical treatment.

The ALJ's second reason for discrediting plaintiff's credibility pointed to the observation that plaintiff is "very well tanned" due to plaintiff spending a lot of time watering outdoor plants. According to the ALJ, this fact contradicts her testimony explaining that she stands up for about 15 minutes before having to lie down for another 30 minutes. However, there is nothing radically inconsistent between her testimony and her conduct.  Even if plaintiff waters in three or four 15 minute intervals, there is nothing inconsistent with disabling pain. Courts have consistently held that plaintiff should not be penalized for trying to lead normal lives. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Additionally, only when a plaintiff's activity is inconsistent with her claimed limitations should such have any bearing on her credibility.  Id. The Court finds the ALJ's rationale unpersuasive.

The ALJ also points out that there has been no other hospitalization other than in July 1997 for cervical spine surgery. The ALJ indicates that plaintiff has "never been

referred to or sought treatment at a pain control clinic" and that the medical record appears sporadic. AR 28. Again, the ALJ seems to put blame on the plaintiff. However, plaintiff sought the advice and consultation of her doctors. There is no indication that her doctors prescribed her attendance at a specialized pain control center. Rather, the doctors prescribed her pain medications which were ineffective. Plaintiff has clearly identified her frustration with her doctors. Plaintiff even underwent surgery based on her doctors' diagnoses and opinions.

      The Court finds that the ALJ's articulation for discrediting plaintiff's credibility is not "clear and convincing" as the law requires.

## **ORDER**

      For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for awarding of benefits.

DATED: October 6, 2006

/s/
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE